IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMIE G. HARE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN POTTER,** | : | **No. 02-CV-7373** |
| **Postmaster General,** | : | |
| **United States Postal Service,** | : | |

**MEMORANDUM OPINION**

TIMOTHY R. RICE                                                                                    February 12, 2008
U.S. MAGISTRATE JUDGE

      Plaintiff Jamie Hare seeks attorney's fees and costs after a jury found she was the victim of a retaliatory hostile work environment. The jury, however, awarded no compensatory damages and I denied her back pay request. Hare v. Potter, 2007 WL 4275508, at *1. Hare is no longer employed by United States Postal Service ("Postal Service"); but I granted her equitable relief consisting of supplemental management training and a requirement that the Postal Service post notices of the verdict in certain regional offices. See id. Although the Postal Service maintains Hare is precluded from recovering fees and costs, I grant Hare's motion because the verdict establishes she is a "prevailing party" and a fee award furthers the purpose of Title VII.

I.   **Background**

      In 2002, Hare brought an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (2003), against the Post Service, seeking damages and equitable relief. Complaint at 8-10, Hare v. Potter, No. 02-7373 (E.D. Pa. filed Sept. 19, 2002) The United States Court of Appeals for the Third Circuit reversed a grant of summary judgment for the Postal Service and remanded as to three claims. Hare v. Potter, 220 Fed. Appx. 120 (3d Cir. 2007).

After the parties agreed to drop the gender retaliation claim, the jury returned a split verdict on the remaining two claims: ruling for the Postal Service on the retaliation due to exclusion from career advancement claim, and ruling for Hare on the retaliatory hostile work environment claim.

Viewing the facts in the light most favorable to Hare, the verdict winner, see Starcesky v. Westingtonhouse Elec. Corp., 54 F.3d 1089, 1097 n.6 (3d Cir. 1995), the retaliatory hostile work environment was based on evidence that Hare was a highly regarded postmaster on the promotion track until she filed complaints of sexual harassment and retaliation. Hare frequently had been selected for assignments as acting-post office operations manager and acting officer-in-charge for various post offices, received superior evaluations, and was part of the Postal Service's succession plan. In 2000, Hare filed a complaint of sexual harassment by a postal inspector and a complaint of retaliation against certain members of the Postal Service management. After these complaints, her career plummeted. Although she was promoted to another postmaster position in 2002, she received little assistance from management in performing her new job, and received less favorable evaluations. While Hare was on sick leave, her replacement was told to leave the work for Hare's return, which resulted in additional work for her and lapsed deadlines. Hare never again received additional prestigious assignments in upper management, as she had before filing her harassment complaint.

Hare also endured numerous audits at her new office, ranging from one-day audits to audits that lasted for many months, each of which impacted the ability of her post office to function and her ability to perform her job. For example, while she was on leave under the Family Medical Leave Act, her postage stamp inventory was sealed and she could not obtain postage stamps upon her return until an audit was conducted. In addition, her former supervisor

became aware of various operational issues at Hare's post office. The operational issues were referred to the Inspection Service, not to Hare or Hare's supervisors, which was normal procedure, and the Inspection Service did not conduct an investigation until approximately a year later. The inspection found no misconduct on the part of Hare or her employees. Amid the stress of handling such recurring issues, Hare resigned and ended what had been a promising career.

II.     **Discussion**

"[I]n the absence of legislation providing otherwise," parties bear their own attorney's fees and costs." Christianburg Garment Co. v. E.E.O.C., 434 U.S. 412, 415 (1978) (citing Alyeska Pipeline Co. v. Wilderness Soc'y, 421 U.S. 240 (1975)). Congress provided limited exceptions to this rule under selected statutes, including Title VII, which applies here. Id. at 415-16; accord 42 U.S.C. § 2000e-5(k). Congress authorized fee-shifting for prevailing Title VII plaintiffs "to encourage individuals injured by . . . discrimination to seek judicial relief." Newman v. Piggie Park Enter, Inc., 390 U.S. 400, 402 (1968); accord Albemarle Paper Co. v. Moody, 422 U.S. 405, 415 (1975) (applying Piggie Park to Title VII cases). A Title VII plaintiff is the "chosen instrument of Congress to vindicate 'a policy that Congress considered the highest priority.'" Christianburg Garment Co., 434 U.S. at 418-19 (quoting Piggie Park, 390 U.S. at 402). "If successful plaintiffs were routinely forced to bear their own attorney['s] fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." Piggie Park, 390 U.S. at 402.

Under Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs." 42 U.S.C. § 2000e-5(k). Plaintiffs must establish they are a prevailing party, and that the requested fee is reasonable. Pino v. Locasio,

101 F.3d 235, 237 (2d Cir. 1996); see also Farrar v. Hobby, 506 U.S. 103, 116-17 (1992) (O'Connor, J. concurring); Buss v. Quigg, 2002 WL 31262060, at *3 (E.D. Pa. Oct. 9, 2002) (Schiller, J.).

Only a plaintiff who is a "prevailing party" can be awarded attorney's fees.  See Farrar, 506 U.S. at 109.[1]  The Supreme Court has broadly construed the term 'prevailing parties.'  See Truesdell v. Phila. Hous. Auth., 290 F.3d 159, 163 (1998) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  "[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some benefits the parties sought in bringing the suit."  Id. (quoting Hensley, 461 U.S. at 433).  To qualify as a "prevailing party", the plaintiff "must obtain an enforceable judgment" or comparable relief against the defendant.  Farrar, 506 U.S. at 111 (citing Hewitt v. Helms, 482 U.S. 755, 760 (1987); Maher v. Gagne, 448 U.S. 122, 129 (1980)).  A pronouncement the defendant violated federal law "unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party.  Of itself, 'the moral satisfaction [that] results from any favorable statement of law' cannot bestow prevailing party status."  Farrar, 506 U.S. at 112 (quoting Hewitt, 482 U.S. at 762) (alterations in original).

Hare's status as a prevailing party is a close question.  "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  Farrar, 506

---

[1] Although Farrar was brought under §1988, the standards for attorney's fees are "generally applicable in all cases in which Congress authorized an award of fees to a 'prevailing party.'"  Hensley v. Eckerhart, 461 U.S 424, 433 n.7 (1983); Commonwealth v. Flaherty, 40 F.3d 57, 61 (3d Cir. 1994) (same standards used for attorney's fees under Title VII and 1988).

U.S. at 111.  Although a plaintiff who received only a judgment is not a prevailing party, see Rhodes v. Stewart, 488 U.S. 1, 4 (1998), a plaintiff awarded nominal damages is a prevailing plaintiff,  Farrar, 506 U.S. at 112 (plaintiff prevailing party when awarded nominal damages).  Similarly, a plaintiff awarded equitable relief may be a prevailing party.  See Baumgartner v. Harrisburg Housing Authority, 21 F.3d 541, 544 (3d Cir. 1994) (plaintiff prevails if received injunctive relief or recovered damages) overruled on other grounds by Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 602 (2001); Hashimoto v. Dalton, 118 F.3d 671, 677, 678 (9th Cir. 1997) (prevailing party even though no damages or reinstatement where equitable relief included ordering the defendant to cease and desist notification of prospective employers of its employees or former employees' protected activity, remove a negative reference from the plaintiff's personnel file, provide EEO training, and post the EEOC notice); but see Barnes v. Broward County Sheriff's Office, 190 F.3d 1274, 1278 (11th Cir. 1999) (applicant not a prevailing party because the plaintiff could not receive benefit from the injunction prohibiting use of challenged test).  Once the "litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness of the fee award,'" not whether the plaintiff is a prevailing party.  Farrar, 506 U.S. at 114 (citing Hensley, 461 U.S. at 452).

The United States Court of Appeals for the Third Circuit has found Fair Housing Act[2]

---

[2]  The prevailing party standard under the Fair Housing Act is the same as under § 1988. New Jersey Coal. of Rooming and Boarding House Owners v. Mayor and Council of Asbury Park, 152 F.3d 217, 225 n.5 (3d Cir. 1998) (prevailing party has the same meaning as under section 3602(o) as under section 1988); People Helpers Found., Inc. v. City of Richmond, 12 F.3d 1321, 1327 (4th Cir. 1993) (prevailing party has the same meaning under both the Fair Housing Act and § 1988); Oxford House-A v. City of University City, 87 F.3d 1022, 1024 (8th Cir. 1996) (same); Avato v. Green Tree Run Condo. Cmty Ass'n, 1998 WL 196397, at 2 (E.D.

plaintiffs prevailing parties where the plaintiffs, an individual and the Fair Housing Partnership of Greater Pittsburgh, Inc., received no monetary or equitable relief.  Alexander v. Riga, 208 F.3d 419, 423-24, 430 (3d Cir. 2000).  After a jury found the defendant violated the Fair Housing Act but did not award damages, the trial court did not submit the issue of punitive damages to the jury, entered judgment in favor of the defendant, and directed the parties to bear their own costs.  Id. at 423-24.  The Third Circuit found the trial court abused its discretion in failing to find the plaintiffs "prevailing parties."  Id. at 429-30.  The court found the plaintiffs' claims of nominal damages and injunctive relief were waived, id. at 429, 434, but remanded to the District Court to enter judgment for the plaintiffs, determine other declaratory relief consistent with the opinion, determine costs and attorney's fees, and submit the question of punitive damages to the jury.  Id. at 435.  The court noted the remand, which included an order to enter judgment against the defendants, would deter future discrimination.  See id. at 425, 430-31.

        Similarly, in Fischer v. SJB-P.D. Inc., 214 F.3d 1115 (9th Cir. 2000), the court found a plaintiff alleging a violation of the Americans with Disabilities Act ("ADA")[3] a prevailing party where the relief was limited to a settlement requiring a restaurant to create a policy statement, post the policy, and insert the policy in the restaurant's manual.  214 F.3d at 1118.  The court reasoned a plaintiff prevails where "the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do."  Id.  If the defendant failed to

---

Pa. Apr. 22, 1998) (Shapiro, J.) (same).  The prevailing party standard is the same under § 1988 as under Title VII.  Flaherty, 40 F.3d at 61 (same standards used for attorney's fees under Title VII and § 1988).  Therefore, the prevailing party standard under the Fair Housing Act is the same as the standard under Title VII.

    [3] See Spencer v. Wal-Mart, Inc., 496 F.3d 311, 318 (3d. Cir. 2006) (applying the civil rights fee-shifting law to the ADA).

perform the obligations, the court noted, the plaintiff "could return to court and force the [defendant] to uphold its end of the settlement." Id.

Here, the jury found the Postal Service violated Title VII by retaliating against Hare, one of its postmasters, through a hostile work environment. The verdict was based on evidence that after engaging in protected activity, Hare vanished as a rising star in the Postal Service management chain. Hare did not receive compensatory damages or back pay, but equitable relief was granted requiring the Postal Service to perform supplemental training and post notice of the verdict. See Hare, 2007 WL 4275508, at *7. Although Hare is no longer a Postal Service employee, Hare's legal relationship with the Postal Service was altered because the Postal Service is under court order to post a notice of the verdict informing its employees that it retaliated against Hare in violation of federal law. This directive benefits Hare by affirming her protected activities and vindicating her efforts to enforce her civil rights. See Stair v. Lehigh Valley Carpenters Local Union No. 600 of the United Bhd. of Carpenters and Joiners of Am., 1993 WL 551450, at *4 (E.D. Pa. Dec. 30, 1993) (Huyett, J.) (former union member prevailing party where defendant enjoined from continuing to create hostile work environment because the plaintiff received "injunctive relief on behalf of herself and all future union members").

Similarly, Hare will have continued involvement in the implementation of the training program because the Postal Service has been judicially ordered to consult with a training consultant recommended by Hare, Hare and her counsel are judicially authorized to meet with the outside trainer prior to the trainer's consultation with the Postal Service, and Hare can demand the Postal Service supply a copy of the training curriculum for in camera judicial review. See Fischer, 214 F.3d at 1118 (prevailing party where the plaintiff can force the defendant to do

something they otherwise would not do).  If the Postal Service does not comply with the order requiring training and posting of the verdict, Hare has authority to return to court to enforce the judgment and force compliance.[4]  See id. at 1118.

Defendant relies on cases where the plaintiff obtained only a favorable verdict, but received no monetary or equitable relief.  See Bonner v. Guccione, 178 F.3d 581, 593 (2d Cir. 1999); Walton v. City of Phila., 1998 WL 633676, at *6 (E.D. Pa. Aug. 17, 1998); Nissim v. McNeil Consumer Products Co., 957 F. Supp. 604, 606 (E.D. Pa.).  Those cases are distinguishable because Hare received equitable relief requiring the Postal Service take affirmative steps to deter future discrimination.  A nominal monetary judgment is not a prerequisite to a fee award under Title VII.  See Baumgartner, 21 F.3d at 544; Hashimoto, 118 F.3d at 678.

Although Hare is no longer a direct beneficiary of the equitable relief because she is no longer an employee, she is required to help implement the training and has an obligation to enforce the judgment.  See Roe v. Operation Rescue, 919 F.2d 857, 869 (3d Cir. 1990) (civil contempt proceedings are part of underlying action).   Even after receiving no monetary award, Hare continued to pursue equitable relief to redress the Postal Service's unlawful retaliation.  By ensuring the Postal Service remains vigilant in enforcing Title VII in the workplace, through enhanced training involving an outside consultant, Hare effectively altered the legal relationship between the parties.  See Abrahamson v. Bd. of Educ. of Wappingers Falls Ctr. Sch. Dist., 374

---

[4] Although the Postal Service notes I have characterized the equitable relief as imposing only a nominal burden, see Defendant's Memorandum of Law in Opposition to Plaintiff's Brief in Support of Attorneys' Fees and Costs at 8, Hare v. Potter, No. 02-7373 (E.D. Pa. filed Jan. 31, 2008), it is nonetheless a judicial sanction imposed over strenuous objection.

F.3d 66 (2d Cir. 2004) (injunction's existence "and the ability to enforce it against the school district materially alters the legal relationship between the parties").  Hare is no longer an aggrieved ex-employee; rather, she is now the party responsible for ensuring a judicial directive is given full effect.  See, e.g., Roe, 919 F.2d at 868-70 (plaintiffs brought civil contempt proceeding for violating court order).

Defendant's reliance on Rhodes v. Stewart, 488 U.S. 1 (1998), fails to justify a contrary result.  In Rhodes, two inmates brought a § 1983 claim alleging denial of their First and Fourteenth Amendment rights when refused permission to subscribe to a magazine.  488 U.S. at 2.  The court entered a declaratory judgment[5] finding correctional officials "had not applied the proper procedures and substantive standards in denying the inmates their request, and ordered compliance with those standards."  Id. at 2.  Before the court entered its order, however, one plaintiff died and the other was released.  Id. at 4.  The court, therefore, found the plaintiffs had not prevailed because the modification of prison policies would not benefit either plaintiff.  Id. at 4.

Unlike the plaintiff in Rhodes, Hare has a continued involvement in the relief granted. See Ctr. for Food Safety v. Johanns, 2007 WL 3072863, at *4 (D. Haw. Apr. 19, 2007) (distinguishing Rhodes in an action for damages under the Equal Access to Justice Act because the plaintiff maintained an "active interest" in ensuring the defendants comply with the statutes). In Rhodes, the declaratory judgment merely required the prison to change its policy, it did not authorize the plaintiffs to participate in creating a new policy or engage in ongoing enforcement.

---

[5] The court noted that a declaratory judgment "is no different from any other judgment. It will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff."  Rhodes, 488 U.S. at 4.

See Rhodes, 488 U.S. at 4.  Hare, however, is involved in the relief and can enforce the equitable remedy, ensuring the Postal Service properly trains its managers and ensuring the Postal Service posts notice of the verdict.  See Roe, 919 F.2d at 869 (proceedings for civil contempt are a part of the underlying action).   This relief altered the legal relationship between the parties and achieved some benefit sought in bringing the suit.  See Trusdell, 290 F.3d at 163 (prevailing party where resolution "changes the legal relationship" of the parties and plaintiff achieved some benefits sought).  Therefore, Hare received more than the mere "moral satisfaction" from "a favorable statement of law."  See Farrar, 506 U.S. at 112 (quoting Hewitt, 482 U.S. at 726) (alterations in original).

At least one court has relied on Rhodes to find a former employee not a prevailing party where the court ordered only injunctive relief.  See Barnes, 190 F.3d at 1278.  In Barnes, the plaintiff was not a prevailing party even though the defendant was enjoined from using pre-employment psychological testing.  Barnes, 190 F.3d at 1278.  The court reasoned the plaintiff's only conceivable benefit was if he elected to re-apply.  Id.  The court, however, acknowledged the possibility that attorney's fees could be awarded for the receipt of injunctive relief if the plaintiff "continue[d] to have or [was] reasonably likely to have some legal relationship with the defendant."  Id. at 1278 n.3.  Moreover, the court in Barnes noted it did not intend to "ignore or eviscerate the continuing viability of the 'private attorney general' cause of action, whereby a plaintiff . . . vindicates a constitutional or statutorily-prescribed right by bringing a civil rights lawsuit and, as a result of that lawsuit, causes a modification of the defendant's behavior or policies."  Id. at 1279; see also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 793 (1989) (plaintiffs served "private attorney general" role where they obtained judgment

altering the school district's policy and vindicating the rights of public employees); Phelps v. Hamilton, 120 F.3d 1126, 1132 (10th Cir. 1997) (granting fees to plaintiff who received declaratory relief against a defendant, which was not directly enforceable against the defendant, because the purpose of fee-shifting is to encourage "individuals to seek relief"); Jones v Lockhart, 29 F.3d 422, 424 (8th Cir. 1994) (awarding attorney's fees to a plaintiff awarded only $1 where the issue was significant and litigation served important public purpose because plaintiff acted as "private attorney general").

Hare is involved directly in the injunctive relief awarded. Unlike the defendant in Barnes, who was ordered to halt a practice, the Postal Service is required to take affirmative steps to train its employees and post an adverse verdict. See Stair, 1993 WL 551450, at *4 (former union member who received injunctive relief was a prevailing party). Moreover, unlike the relief granted in Barnes, Hare obtained relief requiring her input. See Barnes, 190 F.3d at 1278. Her lawsuit modified defendant's behavior. As a result, she is a "prevailing party."

As a prevailing party, Hare "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." E.E.O.C. v. L.B. Foster Co., 123 F3d 746, 750 (quoting Christiansburg Garment Co., 434 U.S. at 416-17). However, an unjust award is limited to where a victory is "'so insignificant . . . as to be insufficient' to support an award of attorney's fees." Farrar, 506 U.S. at 117 (O'Connor, J., concurring) (quoting Garland, 489 U.S at 792) (alteration in original). In addition, where a plaintiff achieves "only partial or limited success, a . . . court may adjust the fee downward." Spencer, 469 F.3d at 318 (citing Hensley, 461 U.S. at 434-36).

Although the Third Circuit has not directly addressed the issue, it suggests it would

11

follow Justice O'Connor's concurrence in Farrar to determine whether a prevailing party has achieved a "technical" or "de minimis" recovery, rendering an award of attorney's fees inappropriate. See Buss v. Quigg, 91 Fed. Appx. 759, 761 (3d Cir. 2004); accord Johnson v. Lafayette Fire Fighters Ass'n Local 472, 51 F.3d 726, 731 (7th Cir. 1995); Briggs v. Marshal, 93 F.3d 355, 361 (7th Cir. 1996); Jones, 29 F.3d at 423-24; Morales v. City of San Rafael, 96 F.3d 359, 763 (9th Cir. 1996), amended by 108 F.3d 981 (9th Cir. 1996); Phelps, 120 F.3d at 1131-32. The concurrence in Farrar listed three factors for determining whether attorney's fees are appropriate: "[first,] the extent of relief, [second,] the significance of the legal issues on which the plaintiff prevailed, and [third,] the public purpose served" by litigation. Farrar, 506 U.S. at 122; see also, Buss, 91 Fed. Appx. at 761.

    First, Hare achieved relief on her claim. Hare originally alleged nine claims, the jury was asked to return a verdict on only two claims, and Hare prevailed on one claim. Hare did not receive damages, but received tangible equitable relief, which the Postal Service was ordered to implement over its objection. See Texas State Teachers, 489 U.S. at 793 (overall success impacts the reasonableness of the award, not whether a fee award is available); Phelps, 120 F.3d at 1132 (plaintiff prevailing on only one claim did not "diminish the reasonableness of awarding some fees to commensurate with their legal efforts").

    Second, the issue on which Hare prevailed was significant. Courts' treatment of the second element differs. See Barber v. Williamson, Inc., 254 F.3d 1223, 1231 (10th Cir. 2001); Buss v. Quigg, 2002 WL 31262060, at *7 (E.D. Pa. Oct. 9, 2002) (Schiller, J.) . Some equate the element with the importance of the legal issue, see, e.g., Milton v. City of Des Moines, 47 F.3d 944, 946 (8th Cir. 1995); Jones, 29 F.3d at 424; others examine the extent the plaintiff succeeded

on the liability theory.  See, e.g., Barber, 254 F.3d at 1231.  The Third Circuit has not addressed the issue.  See Buss, 2002 WL 31262060, at *7; Buss, 91 Fed. Appx. at 761.  Under either approach, Hare satisfies the test.

Hare prevailed on a Title VII retaliatory hostile work environment claim, an important legal issue.  See Christianburg Garment Co., 434 U.S. at 418 (discussing Title VII's importance).  She succeeded "on a 'significant issue in litigation'" achieving "some of the benefit [she] sought in bringing suit."  See Hensley, 461 U.S. at 433; accord Hashimoto, 118 F.3d at 678.  Vindication of a Title VII right is significant, especially when "compared to the injury to a business interest alleged in Farrar."  Jones, 29 F.3d at 324 (cruel and unusual punishment is a significant right compared to the right alleged in Farrar); see Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994) (landlords' liability for employing agents who engage in racial discrimination is a significant legal issue); Hashimoto, 118 F.3d at 678 (where the plaintiff attained non-monetary relief in hostile work environment claim for herself and the current employees of defendant, it was not a "technical" victory).  Although the jury found for defendant on the retaliation by exclusion claim, Hare succeeded on the retaliatory hostile work environment claim, which was a significant issue.  See Farrar, 506 U.S. at 121 (O'Connor, J. concurring) (liability was significant issue).

Third, successful Title VII cases achieve an important public purpose.  See Albemarle Paper Co., 422 U.S. at 415.  Congress intended a Title VII plaintiff to be the "chosen instrument of Congress to vindicate 'a policy that Congress considered the highest priority.'"  Christianburg Garment Co., 434 U.S. at 418 (quoting Piggie Park, 390 U.S. at 402).  The Postal Service was found to have retaliated against Hare in violation of her Title VII rights, and the Postal Service

was required to post notice of the verdict and provide supplemental training to its managers. This verdict and the accompanying relief vindicated Hare, provided a benefit to the Postal Service's current and future employees, and was in the public's interest.  See Brandau v. State of Kansas, 168 F.3d 1179, 1183 (10th Cir. 1999) (verdict vindicated the plaintiff's Title VII rights, which was in the public's interest and which Congress intended to encourage); Hashimoto, 118 F.3d at 678 (relief benefitted the plaintiff and prevented others from being retaliated against).  In addition, the judgment and relief in this case may deter and prevent future retaliatory conduct. See Farrar, 506 U.S. at 122 (O'Connor, J. concurring) (no public purpose served where the plaintiff received one dollar because the judgment would not deter future conduct and the conduct to be deterred was not apparent from the verdict).  Public posting of the verdict and enhanced training will help ensure such deterrence.

      Although Hare did not obtain monetary relief, she obtained equitable relief.  Her "overall success goes to the reasonableness of the award . . . , not the availability of the fee award." Texas State Teachers, 489 U.S. at 793; accord Farrar, 506 U.S. at 121 (O'Connor, J. concuring). Hare prevailed on a significant issue in the case, and the litigation served an important public interest by exposing conduct in violation of Title VII.  See Texas State Teachers, 489 U.S. at 793; Farrar, 506 U.S. at 121-22.  Therefore, Hare is entitled to reasonable attorney's fees consistent with the degree of success.

      BY THE COURT:

      /s/ TIMOTHY R. RICE
      TIMOTHY R. RICE
      U.S. MAGISTRATE JUDGE